IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN RIDDLE, | |
| Plaintiff, | Case No. 1:21-cv-1588 |
| v. | Chief Judge Rebecca R. Pallmeyer |
| CITY OF CHICAGO, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S *MONELL* CLAIM**

This case revolves around brutal and excessive force by Chicago Police Department ("CPD") officers against Plaintiff Bryan Riddle who was wrongly pulled from his car, shoved to the ground, and violently restrained and choked nearly rendering him unconscious, all while other CPD officers silently watched. ECF No. 1 (Compl.) ¶¶ 25-44. The City of Chicago ("City") seeks to escape liability for the unconscionable acts of the CPD with their partial motion to dismiss Plaintiff Riddle's *Monell* claim. That motion should be denied. The motion relies on an incomplete reading of the Complaint, an implicit attempt to raise the pleading standard for *Monell* claims, and a disregard for well-established case law indicating the sufficiency of Plaintiff's allegations. Mr. Riddle has alleged—at a level of detail far beyond what is required at the pleading stage—that (i) the City sanctioned the widespread use of excessive force by CPD officers, and (ii) the City failed to adequately train, discipline, and address a code of silence among its officers, and was deliberately indifferent to the obvious risk that such failure would result in the unconstitutional conduct alleged by Mr. Riddle. The City cannot prevail on its motion by arguing against a hypothetical, less detailed complaint that it apparently wishes Mr.

1

Riddle had filed. It must instead contend with *all* of the allegations against it—allegations that are more than sufficient to state a plausible *Monell* claim.

The City's three core arguments for dismissal miss the mark. The City first argues that Mr. Riddle fails to plead a "widespread practice" of excessive force and of failing to train, discipline, and address a code of silence among its officers because the Complaint does not show "that any of these supposed policies existed in 2019." MTD at 5. But the 2017 DOJ Report is enough to support a reasonable inference that the alleged practices existed at the time of Mr. Riddle's injuries, and even if it were not, the Complaint specifically alleges that three years *after* the DOJ Report an independent monitor and the Attorney General of Illinois both concluded that the CPD still was *not* complying with its obligation to train officers on reasonable use of force. *See, e.g.*, Compl. ¶¶ 88-89. The City simply overlooks these allegations.

The City also contends that the Complaint fails to plead "deliberate indifference" because the City is trying to correct the deficiencies noted in the 2017 DOJ Report, including by entering into a consent decree. MTD at 9-10. But on a motion to dismiss, the Court accepts the *plaintiff's* well-pleaded facts as true, not the defendant's additional facts. In any event, the Complaint specifically alleges that the pattern and practice of unconstitutional conduct, and the City's deliberate indifference, persisted well after publication of the DOJ Report and caused Mr. Riddle's injuries. The City's purported "efforts" to address the problems do not undermine the plausibility of the *Monell* claim. *See Wilson v. Cook Cnty.*, 2020 WL 5642945, at *4 (N.D. Ill. Sept. 22, 2020) (plaintiff stated *Monell* claim against Cook County notwithstanding the county's "subsequent measures to address the [constitutional] problems identified in [a DOJ] report").

Finally, the City argues that Mr. Riddle relies merely "on the existence of a bad policy and a constitutional violation," which fails to plead the "moving force" element of his *Monell*

claim. MTD at 11. Not so. The Complaint alleges, in detail, that Mr. Riddle's injuries were the "highly predictable consequences of the City's failure to train, failure to discipline, and failure to eliminate CPD's code of silence." Compl. ¶¶ 98, 142. This is more than enough to support a reasonable inference of causation. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 384 (7th Cir. 2020).

The City's partial motion to dismiss should be denied.[1]

## FACTUAL BACKGROUND

This case stems from injuries that Mr. Riddle suffered at the hands of a group of CPD officers who used excessive force against him during the early morning hours of September 2, 2019, while he was working as a delivery driver. The violation of Mr. Riddle's constitutional rights began when Officers Raymond Arce and Nicholas Estrada wrongfully pulled over Mr. Riddle, falsely told him he had failed to signal to change lanes, and then, with the help of additional Defendant Officers who had arrived on the scene, yanked him from his car and shoved him to the ground. Compl. ¶¶ 25-44. As soon as Mr. Riddle was on the ground, Officers Estrada and Perez applied a carotid restraint to his neck, nearly rendering him unconscious. *Id.* ¶ 45. Sergeant Schultz, who arrived on the scene after the initial takedown, proceeded to apply multiple carotid holds to Mr. Riddle by choking him with his arm and hand and then kneeling on Mr. Riddle's neck for nearly a minute. *Id.* ¶¶ 48-51. Other officers on the scene did nothing to intervene, even as Mr. Riddle screamed. *Id.* ¶¶ 51-52.

The Complaint alleges, in relevant part, that the Defendant Officers' excessive force and failure to intervene described above stemmed from the City's de facto adoption of a widespread

---

[1] The City asserts in passing that Plaintiff's *Monell* claim should be dismissed "[b]ecause Plaintiff has not pled facts sufficient to show that any officers used excessive force …" MTD at 4. However, the City provides no legal support or reasoning for this argument, and therefore, the argument is waived. *See Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970 n. 3 (N.D. Ill. 2005) ("Failure to develop an argument constitutes waiver.") (citing *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004)).

practice of excessive force, and the City's failure to train, discipline, and address a code of silence among its officers. In support of this *Monell* claim, the Complaint alleges, among other things, that: (1) a 2017 DOJ Report concluded that the CPD "engages in a pattern or practice of unconstitutional use of force," *id.* ¶ 80; (2) according to the DOJ Report, CPD officers do not receive adequate training to make proper decisions regarding the degree of force that is appropriate, *id.* ¶¶ 81-84; (3) training conducted after the release of the DOJ Report remains inadequate, *id.* ¶¶ 85-89; (4) as of June 5, 2020, the CPD has not made "substantive changes to CPD policy … or training" to ensure constitutional use of force, *id.* ¶ 89; (5) there is an entrenched "code of silence" in the CPD that helps shield officers from accountability for misconduct, *id.* ¶¶ 52, 91-97; and (6) the CPD's disciplinary mechanisms are inadequate, *id.* ¶¶ 100-02. The Complaint also explains that the City had actual and constructive notice of CPD's violations due to, among other things, the 2017 DOJ Report, COPA's excessive force investigations and summary reports, the hundreds of lawsuits against the City and its officers for excessive force, and the January 2019 federal consent decree requiring reforms to CPD use of force training, *id.* ¶ 138. These allegations, as well as the others in the Complaint, are sufficient to state a plausible *Monell* claim.

## ARGUMENT

The Court should deny the City's partial motion to dismiss. The Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015), and the City's arguments for dismissal misconstrue or deny the truth of Plaintiff's allegations, rely on case law taken out of context, and fail to recognize that, on a motion to dismiss, the Court draws reasonable inferences in favor of the Plaintiff. Considering the Complaint's well-pleaded allegations and the

reasonable inferences drawn therefrom, Mr. Riddle has sufficiently alleged the required elements of his *Monell* claim—namely, that he (1) suffered a deprivation of a federal right, (2) as a result of a municipal policy, practice, or widespread custom, which (3) was the proximate cause, or moving force, of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014).

I. **THERE IS NO HEIGHTENED PLEADING REQUIREMENT FOR *MONELL* CLAIMS**

The City spends nearly two pages of an eleven-page brief outlining the legal standard for a Rule 12(b)(6) motion, apparently hoping to convince the Court that *Monell* claims are subject to some sort of heightened pleading standard. MTD at 2-3. That is incorrect. The Seventh Circuit, post-*Iqbal*, has reaffirmed that "federal courts may not apply a 'heightened pleading standard' – more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure – in civil rights cases alleging municipal liability under … 42 U.S.C. § 1983." *White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. 2016). All that is required is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As discussed in more detail below, the Complaint meets (and surpasses) that bar.

The City relies heavily on *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) to suggest a higher pleading standard for *Monell* claims, but *McCauley* stands for nothing of the sort. In *McCauley*, the Seventh Circuit concluded that a *Monell* claim was properly dismissed where the claim was "complicated and counterintuitive" and the plaintiff failed to provide more than "one paragraph of factual allegations." *Id.* at 618-19. The court in *McCauley* neither established, nor suggested, a heightened standard for pleading *Monell* claims—it simply concluded that given the complexity of the claim at issue, the plaintiff's mix of legal conclusions

5

and bare bones factual allegations did not nudge the claim across the line from conceivable to plausible under *Iqbal*. Here, by contrast, the claim at issue is not "complicated and counterintuitive," and the City does not argue so. In addition, Mr. Riddle has put forth *dozens* of paragraphs of specific factual allegations in support of his *Monell* claim, far beyond the "one paragraph of factual allegations" in *McCauley*. *Id.* at 618. In relying on *McCauley*, then, the City only further highlights the sufficiency of the allegations in this case.

## II. THE COMPLAINT SUFFICIENTLY ALLEGES WIDESPREAD UNCONSTITUTIONAL PRACTICES

Mr. Riddle's Complaint amply describes widespread practices and customs that caused his injuries. His allegations regarding the City's systemic, unconstitutional police practices show with specificity how the violations of Mr. Riddle's constitutional rights were part and parcel of, and prompted by, the City's customs and practices. Compl. ¶¶ 80-104, 134-144.

### 1. The Violations of Mr. Riddle's Rights Coupled with Independent Reports Demonstrate an Unconstitutional Widespread Practice

The Complaint presents sufficient facts to demonstrate a widespread practice or custom connected to the alleged misconduct by illustrating the ways that the violations against Mr. Riddle reflect and confirm the findings of the numerous reports and statements cited in his Complaint. These include the 2017 DOJ Report, excessive force investigation and summary reports by COPA, the 2016 Police Accountability Task Force ("PATF") Report, letters from the independent monitor overseeing the federal consent decree, and statements from City officials. *See, e.g.*, Compl. ¶¶ 80-85, 88-89, 93-97, 99-101, 135-38. All of these reports demonstrate a widespread practice. *See, e.g.*, *id.* ¶ 80 ("[T]he DOJ concluded that CPD 'engages in a pattern or practice of unconstitutional use of force.'"); *id.* ¶ 81 ("The DOJ Report explains that this pattern of unlawful conduct stems from the fact that CPD officers 'do not receive the quality or quantity

of training' necessary to make proper decisions regarding the degree of force that is appropriate in any given situation."). And Mr. Riddle's allegations of his own experience confirm this. *Shields v. City of Chicago*, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 3, 2018) (finding that plaintiff sufficiently alleged a widespread practice of using excessive force due to inadequate training where the plaintiff's complaint alleged not only his own injury, but also "that the [PATF] Report and January 2017 DOJ Report highlight the deficiencies in relation to the CPD's use of excessive force that are sufficiently similar to Plaintiff's excessive force allegations"); *see also Archie v. City of Chicago*, 2020 WL 5751185, at *3 (N.D. Ill. Sept. 25, 2020); *Arrington v. City of Chicago*, 2018 WL 620036, at *3 (N.D. Ill. Jan. 30, 2018).

The City relies on *Carmona v. City of Chicago*, 2018 WL 1468995 (N.D. Ill. Mar. 26, 2018) to argue that "the existence of the DOJ Report is not sufficient to save Plaintiff's *Monell* claim." MTD at 5. This case is nothing like *Carmona*, and Mr. Riddle provides much more than "the existence of the DOJ Report." In *Carmona*, the court found that the plaintiff, who neither referenced nor attached the DOJ Report to the operative complaint, could not plead a *Monell* claim with a "broad citation to the 160-page DOJ report, without any discussion of the specific findings of the report or any allegations connecting the report findings to the misconduct alleged in his Complaint[.]" *Carmona*, 2018 WL 1468995, at *4. Here, however, Mr. Riddle's Complaint includes specific citations to the DOJ and PATF Reports' findings, and explicitly connects them to the deprivations he experienced. Compl. ¶¶ 52, 80-84, 94-95, 98, 100-103, 142-144. Further distinguishing *Carmona* is that Mr. Riddle's Complaint is not limited to the DOJ Report—it also includes conclusions from other policymakers and independent bodies. *Id.* ¶¶ 87-89, 91, 93, 95-97. Connecting these well-pled facts to Mr. Riddle's experience illustrates the widespread practices causing deprivations of his rights. *See id.* ¶¶ 83, 90, 98, 138.

7

### 2. Multiple Instances of Misconduct are not Required to Allege a Widespread Practice

The City contends that Mr. Riddle is required to show *other* instances of misconduct similar to his allegations to state a plausible *Monell* claim. MTD at 6-7. That is incorrect. As the Seventh Circuit has explained, allegations need not "identify every other *or even one other individual*" harmed by a constitutional violation to allege a widespread practice underlying a *Monell* claim. *White*, 829 F.3d at 844 (emphasis added). Indeed, since the *White* decision, courts in this District have regularly denied motions to dismiss *Monell* claims that are "premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Brainer v. Dart*, 2018 WL 1519154, at *7 (N.D. Ill. Mar. 28, 2018) (collecting cases); *see also Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) ("[A] plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences.") (citations omitted). Mr. Riddle's allegations of the constitutional deprivations he suffered, combined with his allegations of the CPD's widespread practice of excessive force and the City's custom and practice of failing to adequately train and discipline its officers, is sufficient to allege a widespread practice.

Furthermore, the City's assertion that Mr. Riddle "references no other incidents similar to this one," MTD at 6, completely disregards whole sections of the Complaint. As discussed above, the Complaint alleges facts from multiple sources discussing both the City's failure to train and discipline, as well as other incidents of excessive force. *See, e.g.*, Compl. ¶ 86 ("In the years following the release of the DOJ Report, members of the public have continued to file—at alarming rates—complaints of CPD officers using excessive force by shoving, pulling, punching, choking, and slamming citizens during the course of a stop or arrest."). These facts demonstrate

that the violations against Mr. Riddle were part of an ongoing pattern and practice of abuse, which sufficiently alleges a "widespread practice."

*Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021), on which the City relies, does not support dismissal here. First, Mr. Riddle alleges a *systematic* failure by the City to train and discipline, not unspecified allegations "that officers sometimes drive at high rates of speed" as in *Flores*. The court in *Flores* noted how South Bend police officers "generally had a history of reckless speeding." *Id.* at 733. By contrast, Mr. Riddle's allegations cite governmental findings of systemic failures that have persisted over time. More fundamentally, the part of *Flores* most applicable to the claim here supports the sufficiency of Mr. Riddle's allegations. In *Flores*, the court explicitly noted that "[F]ailure-to-train liability does *not* require proof of widespread constitutional violations [to be] actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Id.* at 731 (emphasis added). That is to say "evidence of a single violation" with proof of a lack of training "*could* trigger … liability." *Id.* (citation omitted) (emphasis added). Accordingly, *Flores* does not advance the City's cause.

### 3. Mr. Riddle Sufficiently Pleads that CPD's Code of Silence is a Widespread Practice

The City argues, without citing any authority, that statements by City officials that a code of silence exists do not show a widespread practice supporting a *Monell* claim. MTD at 6-7. But the Complaint does not merely allege that a code of silence "exists"—it alleges that this code of silence is institutionalized and entrenched, a fundamental feature of CPD culture that caused injury to Mr. Riddle. *See, e.g.*, ¶¶ 91-100. The various examples provided in the Complaint show that this code is inculcated and maintained throughout the CPD, and that the City has failed to eliminate it. This is sufficient to allege a widespread practice supporting a *Monell* claim. *See Baskins v. Gilmore*, 2018 WL 4699847, at *4-*5 (N.D. Ill. Sept. 30, 2018).

### III. THE COMPLAINT SUFFICIENTLY ALLEGES DELIBERATE INDIFFERENCE BY THE CITY

Although the City tries its best to muddy the waters, the Complaint adequately alleges "deliberate indifference" on the part of the City. A plaintiff advancing a *Monell* claim based on a failure to train can allege deliberate indifference in two ways: (1) a failure to provide adequate training in response to "[a] pattern of similar constitutional violations" by inadequately trained officers, *Connick v. Thompson*, 563 U.S. 51, 62 (2011), or (2) a failure "to provide adequate training in light of foreseeable consequences," *Sornberger v City of Knoxville*, 434 F.3d 1006, 1029-30 (7th Cir. 2006). Here, the Complaint alleges deliberate indifference in both ways.[2]

First, as explained above, the Complaint supports the reasonable inference that the City had knowledge of a widespread practice of excessive force by its officers yet failed to adequately train and supervise officers in response. *See Flores*, 997 F.3d at 731 ("[F]ailure-to-train (or inadequate-training) liability arises when a municipality adheres to a training program 'that they know or should know has failed to prevent tortious conduct by employees,' thereby demonstrating deliberate indifference to this known risk."). For example, the 2017 DOJ Report, based on DOJ's review and investigation of hundreds of uses of force, concluded that CPD "engages in a pattern or practice of unconstitutional use of force" because it "has not provided officers with adequate guidance to understand how and when they may use force, or how to safely and effectively control and resolve encounters to reduce the need to use force." Compl. ¶¶ 80-81. Yet more than two years *after* the Report, the City's officers engaged in the precise

---

[2] As a threshold matter, the City argues in passing that Plaintiff "does not even name the final policymaker," suggesting that this purported failure somehow undermines Plaintiff's *Monell* claim. MTD at 8. It does not. This case does not advance a "final policymaker" claim; rather, Mr. Riddle brings *Monell* custom and "failure to" claims, neither of which requires identifying a specific final policymaker. *LaPorta v. City of Chicago*, 2016 WL 4429746, at *2 (N.D. Ill. Aug. 22, 2016) (noting that the identity of the final policymaker "is beside the point" in a *Monell* custom claim "because [Plaintiff] need not identify an individual with 'final policymaking authority' to succeed on [t]his *Monell* claim").

unconstitutional actions against Mr. Riddle that the DOJ identified. Further, as recently as June 2020, nine months *after* Mr. Riddle was a victim of excessive force at the hands of CPD officers, both the independent monitor overseeing the federal consent decree to reform the CPD and the Attorney General of Illinois reported that the CPD had *not* changed training to ensure that officers used reasonable force. *Id.* ¶¶ 88-89. These allegations are more than sufficient to show the City's deliberate indifference to unconstitutional uses of force. *Connick*, 563 U.S. at 61 ("[W]hen City policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.").

Second, Mr. Riddle has sufficiently alleged deliberate indifference based on the "highly predictable consequence" of not providing adequate use of force training and supervision. Specifically, the Complaint shows that absent adequate use of force training, it was "highly predictable" that officers responsible for patrolling the City of Chicago, and stopping and arresting suspects, would be prone to make incorrect decisions regarding constitutional use of force. This predictability stems from the fact that CPD officers, by the nature of their duties, will "interact[] with individuals who may be fearful or suspicious of CPD due to the Department's decades-long history of excessive force and other misconduct, and therefore may not immediately comply with an officer's instruction[.]" Compl. ¶ 142. Thus, the Complaint further establishes that such unconstitutional use of force was a highly predictable consequence of "the City's failure to train, failure to discipline, and failure to eliminate CPD's code of silence." *Id.*

The City's arguments that the Complaint fails to allege deliberate indifference miss the mark. The City first argues that Mr. Riddle "failed to specify" how the City "knew about the practice and failed to act." MTD at 8. This is flatly contradicted by the record. The Complaint

11

alleges, for example, that the DOJ Report put the City on notice that the CPD "engages in a pattern or practice of unconstitutional use of force," and that CPD officers "do not receive the quality or quantity of training" necessary to make proper decisions regarding the degree of force that is appropriate in any given situation. Compl. ¶¶ 80-81; *see Arrington*, 2018 WL 620036 at \*3-\*4 (finding that the DOJ Report's findings were "more than sufficient to plausibly infer that the City has a custom or practice of tolerating or enabling excessive force by its police officers, and that the City was on notice of this custom or practice during the relevant time period"). The Complaint also alleges the City's knowledge of the CPD's code of silence and failure to discipline, including through the findings of the DOJ Report, Compl. ¶ 94, express acknowledgement by City officials, *id.* ¶¶ 95-97, and federal jury findings against the City that preceded the constitutional violations alleged in this case, *id.* ¶ 93. Drawing all reasonable inferences in favor of Mr. Riddle, the Complaint adequately alleges that the City had actual and constructive knowledge of the precise unconstitutional practices at issue here.

Similarly, the Complaint adequately alleges that the City failed to act. For example, the Complaint alleges that changes to CPD use of force training initiated after the release of the DOJ Report have not addressed the deficiencies; that this training still fails to adequately explain the proper constitutional standard for use of force; and that the training is delivered in a manner that "give[s] the impression there is no need to change CPD's culture around use of force incidents." Compl. ¶¶ 85-87. Moreover, in the years following the release of the DOJ Report, members of the public have continued to file complaints of excessive force "at alarming rates." *Id.* ¶ 86. Therefore, the City's knowledge of the unconstitutional practices at issue, and its failure to act, are plain from the face of the Complaint.

The City next argues that its purported efforts to address the deficiencies noted in the DOJ Report show that the City was not deliberately indifferent. MTD at 7-10. But again, it is the *plaintiff*'s well-pleaded facts, not the defendant's assertions, that are accepted as true. The Complaint specifically alleges that changes to CPD use of force training "initiated *after* the release of the DOJ Report" have *not* addressed key deficiencies, Compl. ¶ 85 (emphasis added), and that the City continues to fail to comply with its obligation to "ensure reasonable and constitutional use of force" by its officers, *id.* ¶ 89. These allegations are sufficient to allege deliberate indifference. *Connick*, 563 U.S. at 61. At the pleading stage, disputes about the extent of purported remedial measures taken by a defendant do not undermine the plausibility of a *Monell* claim. *See Wilson*, 2020 WL 5642945, at *4 (finding that plaintiff stated a *Monell* claim notwithstanding Cook County's "subsequent measures to address the problems identified"); *Colon v. City of New York*, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (plaintiff stated a plausible *Monell* claim against New York City for unconstitutional police practices despite the city's "strong reported efforts" and "serious training to avoid constitutional violations").

Finally, the City cites, without elaboration, *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993) for the proposition that, "Failing to eliminate a practice cannot be equated to approving of it." But *Wilson* involved a "final policymaker" claim that required the plaintiff to prove that the then-Superintendent of Police specifically "approved" and "adopted" the alleged unconstitutional practice as final policymaker. That is not the claim here. Here, Mr. Riddle alleges a widespread practice and failure to train and discipline claim (not a final policymaker claim) with specific facts that the City had knowledge of these issues and failed to address them. At this stage of the litigation, that is all that is required.

13

### IV. MR. RIDDLE HAS SUFFICIENTLY ALLEGED THAT THE CITY'S FAILURE TO ACT WAS THE MOVING FORCE BEHIND HIS INJURIES

Finally, the City argues that Mr. Riddle has not adequately pleaded causation—i.e., that the City's customs and practices were the "moving force" behind the alleged constitutional violations. MTD at 10-11. The City is wrong again. The Complaint alleges, with specific facts, that the City has failed to address known deficiencies in the CPD's use of force training, disciplinary systems, and culture of silence, and that the "highly predictable consequence" of this failure was the excessive force and failure to intervene suffered by Mr. Riddle. *See* Compl. ¶¶ 80-104; 134-44. Both the Supreme Court and the Seventh Circuit have noted that the "high degree of predictability" that supports notice for the purpose of showing deliberate indifference "may also support an inference of causation—that the municipality's indifference led to the very consequence that was so predictable." *Polk County*, 960 F.3d at 384 (quoting *Bryan County*, 520 U.S. at 409-10); *see also id.* at 384 ("Much of the same evidence proving [defendant] deliberately indifferent to the constitutional consequences of its inaction likewise illustrates that its indifference was the moving force behind [plaintiffs'] injuries."). That is exactly the case here. As the Complaint alleges, given the duties of CPD officers, the City's failure to adequately train officers on use of reasonable force would almost certainly be expected to cause the constitutional violations alleged in the Complaint. *See, e.g.*, Compl. ¶ 142. And even if it was not highly predictable that the City's failure to act would lead to the constitutional violations alleged here, the Complaint's allegations nonetheless support a reasonable inference that the City's failure to act was the moving force behind Mr. Riddle's injuries. *See Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894-95 (N.D. Ill. 2016) (finding that plaintiff adequately alleged the causation element of her *Monell* claim where the "thrust of the complaint" was that "the

CPD's code of silence, and the City's policy of refusing to discipline officers, positively encouraged or emboldened the officer defendants to carry out [the violations] alleged").

The City's cited cases are inapposite. MTD at 11. In *Anderson*, the court dismissed a *Monell* claim because the complaint failed to sufficiently plead that the City's widespread custom of unconstitutional *investigatory stops* was the moving force behind plaintiff's alleged *false arrest*. *Anderson v. Allen*, 2020 WL 5891406 at *3-*4 (N.D. Ill. Oct. 5, 2020). The court reasoned that investigatory stops and arrests fundamentally differ in nature and legal standard, and therefore allegations of misconduct with respect to one, without more, could not establish misconduct as to the other. Here, by contrast, Mr. Riddle's allegations are tied directly to the exact constitutional violations he suffered—for example, that the City's failure to train officers on reasonable use of force caused CPD officers to use excessive force against him.

The City's off-hand reference to *Jordan v. City of Chicago*, 2021 WL 1962385 (N.D. Ill. May 17, 2021) is similarly misplaced. In *Jordan*, the plaintiff's *sole* allegation of *Monell* causation was, "The City's above described 'code of silence' was a proximate cause for the actions of the officer defendants to concoct a false story and fabricate evidence," which the court found insufficient. *Jordan*, 2021 WL 1962385 at *5. By contrast, Mr. Riddle's Complaint describes causation in detail, alleging, for example, five specific plausible allegations of causation with regard to the code of silence *alone*. Compl. ¶ 98. These (and other) allegations far exceed the single, conclusory allegation found insufficient in *Jordan*, and easily satisfy Mr. Riddle's requirement on the moving force element.

## V. CONCLUSION

For each of the foregoing independent reasons, the Court should deny the City's partial motion to dismiss.

15

Dated: July 30, 2021 /s/ *Mary Rose Alexander*

Mary Rose Alexander (IL Bar 6205313)
Katrina L. Robinson (IL Bar 6334603)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
mary.rose.alexander@lw.com
katrina.robinson@lw.com

Marcus Curtis (admitted *pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Fax: (858) 523-5450
marcus.curtis@lw.com

Brittany Shaw (IL Bar 6333347)
Daniel Massoglia (IL Bar 6317393)
First Defense Legal Aid
601 South California Avenue
Chicago, IL 60612
Telephone: (708) 797-3066
brittany@first-defense.org
daniel@first-defense.org
*Attorneys for Plaintiff*